## The Great Western Railway of Canada v. W. Ward Wheeler.

*Notice : Shipping marks to indicate consignee.* ·The knowledge of the arbitrary mark of a consignee of goods by railroad, possessed by a former officer or agent of the railroad company,—such knowledge not having been acquired by any usage, custom or course of business of the company,—is not the knowledge of the company. And, it seems, that notice to an agent, on one or more occasions, that certain arbitrary marks indicate a certain ownership, will not affect the company with notice of such ownership, in any subsequent transaction, unless the agent actually remembers the previous notices, and has reason to believe that the marks still indicate the same ownership.

*Heard May 10. Decided May 13.*

Error to Wayne Circuit.

This was an action on the case brought by W. Ward Wheeler, in the Circuit Court for the County of Wayne, against the Great Western Railway of Canada, for neglecting to deliver two casks of zinc, received by the railway company at Suspension Bridge to be conveyed to the plaintiff at Detroit. The plea was the general issue. The evidence on the trial showed that the goods were delivered to the company at Suspension Bridge, on the 12th of April, 1866, in two casks marked " W. W. W., Detroit, Mich."; that

they arrived in Detroit on the 14th of April, and remained in the warehouse of the company until the 26th of April, when the warehouse was destroyed by fire, and the goods so much damaged as to be useless. It appeared, also, that the rate charged upon the goods for freight, included the cartage necessary to deliver them to the consignee in Detroit. The company claimed that they did not know who was intended by the initials " W. W. W.," until after the fire, when the bill of lading was presented at their office by the consignee. The question,—whether the company knew or had the means of knowing who was intended by the mark on the goods,—was the principal issue of fact contested before the jury. On the request of the plaintiff the Circuit Judge charged the jury:

1. That even if the defendants did not know that the marks " W. W. W." represented the plaintiff, unless the jury find that the goods were destroyed at the fire of the defendant's depot, then the defendants have shown nothing to excuse their liability. 2. If the jury find that the defendants had frequently received, transported and delivered to plaintiff, before the shipment of the goods sued for, goods of the same nature and description, and marked in the same manner, it is evidence tending to show that the company's agents knew that " W. W. W." was the shipping mark of plaintiff. To each of which the defendants excepted.

The counsel for the said defendants then asked the Court to instruct the jury:

" 1. The defendants are not liable unless they knew that the goods were intended for the plaintiff. 2. The marks or letters on the packages are not sufficient evidence of themselves to charge them with such knowledge. 3. It is for the plaintiff to show that the defendants had this knowledge. 4. There is no evidence in the case sufficient to charge the defendants with this knowledge. 5. The books of the company are the most reliable evidence of the

course of business of the company, and of the receipt of goods, and the jury should so regaid them in this case. 6. The plaintiff is bound to show that some of the officers or agents of the company, who were such when these goods arrived here, were chargeable with notice that they were intended for the plaintiff. It is not enough to show that former officers or agents were chargeable with such notice. 7. That if the plaintiff had reason to believe that his goods had arrived at the depot of the company in Detroit, it was his duty to have called for them, or to enquire for them at the expiration of the usual time for delivery; and if he unreasonably neglected to do so, he was himself in fault, and cannot recover, or he must be deemed to have consented to let them remain as warehoused."

The Court instructed the jury as prayed for in the first, second and third points; but refused to charge as requested in the fourth point, to which the defendants excepted.

As to the fifth, sixth and seventh points, the Court charged as follows:

"(5.) Upon that, gentlemen, I think it is for you to determine what weight you will give to the books, or any testimony in the case, and I cannot interfere with your right in that regard; therefore that is refused.

" (6.) That, gentlemen of the jury, means to say if the company formerly had notice that W. W. W. meant Wm. Ward Wheeler, and the agent, for any reason left the employment of the company, and they had another agent in their employ that did not know that, it is claimed the company would not be liable; that the knowledge of the company ceased with the discharge of the agent by the company who possessed that knowledge. As a question of law, gentlemen, I am not entirely clear upon that point; but inasmuch as there has been no evidence upon that question, I shall charge you that that is not law. I wish to say to you, though I am not entirely clear upon that point, yet if I do charge you, *you* must be entirely clear upon that

point; if I say to you it is law, that is all there is of it, it is law. It was not necessary that this agent who had this knowledge was in the employ; if the company knew it before, by any of its agents, that would be sufficient; so that that is refused.

" (7.) For the purposes of this case, gentlemen, I shall refuse that."

The counsel for the defendants excepted severally to each of the rulings of the Court on these points. The Jury found a verdict for the plaintiff; and the judgment entered thereon, the defendant below brings into this Court by writ of error.

*Theo. Romeyn, W. B. Moran* and *H. L. Baker,* for plaintiff in error.

*D. B. & H. M. Duffield,* for defendant in error.

GRAVES, J.

The defendant in error sued the company to recover the value of two casks of zinc brought over the railway and deposited in the depot of the company on the 14th day of April, 1866, and destroyed by the fire which consumed the depot on the night of the 26th of the same month. The goods were marked " W. W. W." and had nothing else upon them to indicate to whom they were consigned. In consequence of this the company claimed that they had no information as to the consignee, and could do nothing more than to warehouse the goods on their arrival, until the consignee should appear, or in some way be pointed out to them. The defendant in error urged that the company were chargeable with notice, that goods marked as these were, were meant for him, and in order to prove this, he testified that, occasionally from September, 1863, to November, 1865, the company had brought zinc for him, marked like that in question, and that in more than one instance it had been de-

livered to him by the company without his interference.
He further testified that on two or three earlier occasions,
he called for zinc, which he then expected, and saw the
agent on the subject, who, he says, knew his mark perfectly
well. He did not recollect who this agent was, but thought
it was McDonnell. The witness was unable to fix the date
of any of these interviews or deliveries. The company gave
evidence with a view to show that none of their agents, in
April, 1866, had any knowledge that the mark upon the zinc
in question, signified the defendant in error, and further gave
evidence to prove that it was the business of the delivery
clerk to attend to the delivery of goods to consignees, and
that such clerk had been several times changed within a
year or two before the fire, and that the clerk employed in
the month of April, 1866, had been in the company's ser-
vice for some time before.

In view of the testimony given on this subject, the
Court at the instance of the defendant in error, instructed
the jury as follows : " If the jury find that the defendants
had frequently received, transported and delivered to plain-
tiff before the shipment of the goods sued for, goods of the
same nature and description, and marked in the same
manner, it is evidence tending to show that the company's
agents knew that "W. W. W." was the shipping mark
of plaintiff. " The plaintiffs in error then requested the
Court to charge that "the plaintiff is bound to show that
some of the officers or agents of the company, who were
such when these goods arrived here, were chargeable with
notice that they were intended for the plaintiff. It is not
enough to show that former officers or agents were charge-
able with such notice." But the Circuit Judge being in
doubt, as he stated to the jury, about the law involved in
this request, refused to give the direction prayed for, and
advised the jury — " that it was not necessary that this
agent who had this knowledge was in the employ; if the

company knew it before by any of its agents that would be sufficient."

We think in this charge and refusal the Court erred. The case presented was not one in which the jury could rightly infer a continuance of knowledge in the company in consequence of notice to a former agent.

The fact, if admitted, that the mark upon the goods had been understood by former agents as the mark of the plaintiff below, was an isolated and transient one, and capable of affecting the company only, because the latter as principal, was identified with the agents possessing the knowledge so far as to make such knowledge in the agent, the knowledge of the company. Any change of agency which would remove that knowledge from the company's service would sever all connection between the company and the means of knowledge, and so effectually exclude all idea of notice through the medium of former agents. The subject of notice in this case had no relation to any usage, system, course of business, or persistently impressive circumstance upon which a presumption could be raised, that knowledge of it once brought home to an agent must permanently attach to the corporation. From the nature of the thing the notice could only attach to the principal, so long as the knowledge should remain present in the agency. A corporation has no memory except through its agents and its records, and while the letters " W. W. W." might appear in the company's books, the meaning ascribed to them by defendant in error would not. The circumstance that these letters personated this or that individual would still be an extrinsic fact known or unknown to the agent, and if unknown to the agent, then unknown to the company.

We feel called on to observe farther, that when carriers are receiving daily a multitude of differing packages for distribution, delivering among a very large number of persons of whom a considerable portion at least, must be strangers to the agents, a notice to an agent on one or more occa-

sions, that certain arbitrary marks indicate ownership in a particular person, ought not to affect the prnicipal with notice of the same fact in any future transaction, unless it is affirmatively shown that the agent at the time of the latter transaction actually remembers the previous notice, and in view of the circumstances has reason to suppose that the same marks still denote the same ownership. And where one, instead of having his goods marked with his name, chooses to adopt some arbitrary or equivocal mark or device, which any other person has an equal right to employ, he should be considered as thereby taking upon himself any risk of failure of the goods to reach him, in consequence of such imperfect marking, and should at his peril see that the carrier in each instance understands the complete significance of his mark or device.

The record presents some other questions, but as they will probably not arise on another trial, we do not consider them.

The judgment below must be reversed with costs and a new trial ordered.

The other Justices concurred.